UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KEVIN QUIRK,**

    **Plaintiff,**

v.                                                          Case No.

**LENNAR CORPORATION and
LENNAR HOMES, LLC,**

    **Defendants.**

_____/

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, KEVIN QUIRK, on behalf of himself and all others similarly situated, hereby sues Defendants, LENNAR CORPORATION and LENNAR HOMES, LLC (collectively, "LENNAR" or "Defendants") and states as follows:

**INTRODUCTION**

This is an action brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq.* ("FLSA") to recover unpaid overtime wages and liquidated damages owed to Plaintiff, and all other current and former employees of Defendants that are similarly situated.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1332.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, KEVIN QUIRK, is an adult and resident of Pasco County, Florida.

4. Defendant, LENNAR CORPORATION, is a Foreign Profit Corporation authorized and doing business in this Judicial District. Defendant, a Fortune 500 company, is headquartered in Miami, Florida and is one of the largest homebuilders in the United States. Defendant builds single-family attached and detached homes in communities in urban, suburban, Active Adult and golf course communities across the United States.

5. Defendant, LENNAR HOMES, LLC, is a Florida Limited Liability Company authorized and doing business in this Judicial District.

6. Defendants are an integrated enterprise or a joint employer.

7. Defendants are enterprises engaged in commerce as defined by 29 U.S.C. § 203(s)(l)(A) in that they (a) have employees engaged in commerce or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and (b) have an annual gross volume of sales made or business done that is not less than $500,000.00.

8. Plaintiff was an employee of Defendants pursuant to 29 U.S.C. § 203(e)(l), Defendants were Plaintiff's employer within the meaning of 29 U.S.C. § 203(d), and Defendants employed Plaintiff within the meaning of 29 U.S.C. § 203(g).

## GENERAL ALLEGATIONS

9. At all times material, Defendants willfully violated the Fair Labor Standards Act.

10. Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

11. Plaintiff requests a jury trial for all issues so triable.

## FACTUAL ALLEGATIONS

12. From approximately June 20, 2018 to January 2, 2020, Plaintiff was employed by Defendants as a Construction Manager (a/k/a Superintendent). Initially, Plaintiff was assigned to the Defendants' Estancia community in Wesley Chapel, Florida. At the end of his employment with Defendants, Plaintiff was assigned to Defendants' Copper Spring community in New Port Richey, Florida.

13. Plaintiff, and other Construction Managers/Superintendents, are classified by Defendants as exempt under the Fair Labor Standards Act and are paid a salary based on a 40-hour work week.

14. During his employment with Defendants, Plaintiff worked an average of approximately 50 hours per work week, but was not compensated at a rate of time and one-half his regular rate of pay for all hours worked over 40 in a work week.

15. Construction Managers/Superintendents are required to have a high school degree or equivalent and typically must have 3-6 years of experience in residential construction management.

16. Construction Managers/Superintendents work under the supervision of Defendants' senior management and are commonly the lowest-level construction employees

in Defendants' hierarchy. Specifically, Plaintiff reported up the following chain-of-command within his division: Ron Price (Senior Construction Manager), Mary Price (Vice President of Construction/Area Construction Manager), and Tad Thaxon (Division President). If any matter of significance that arose on the job site, Plaintiff was required to immediately contact either Ron Price or Mary Price, depending on Plaintiff's site assignment.

17. Defendants have a defined, detailed, and efficient homebuilding process that Construction Managers/Superintendents, including Plaintiff, are expected to strictly adhere.

18. Defendants utilize subcontractors/trades for most aspects of its home construction. Subcontractors complete their work for Defendants in accordance with price and time schedules and in compliance with applicable building codes, laws, rules, and regulations.

19. Plaintiff's primary job duties consisted exclusively of ordinary inspection work to ensure compliance with Defendants' plans, along with scheduling subcontractors and supplies to ensure both were in place at the proper time. Plaintiff's primary job duties and responsibilities did not require the exercise of discretion and independent judgment.

20. Specifically, Plaintiff arrived at his assigned community each day in his personal vehicle. Upon arrival, Plaintiff logged in to Defendants' BuildPro software on his work-issued iPad. From there, Plaintiff began walking through the homes in the residential community performing ordinary inspections and checking on tasks that have been completed by subcontractors/trades in each home. If a task was completed by a subcontractor, then Plaintiff contacted the next pre-determined trade to notify the subcontractor that Defendants are ready for them to begin their work. Throughout Plaintiff's walkthroughs, he was required to consistently enter data into BuildPro.

21. Upon completion of a home, Plaintiff accompanied the homeowner on a final (or, "A-OK") walkthrough. This occurred after Defendants' warranty department conducted a walkthrough where the homeowner identified minor issues that needed resolved. The warranty department prepared a list of the small repairs that were required. After the repairs were made, Plaintiff and the homeowner did a final walkthrough with the list to confirm that the minor repairs were completed.

22. Plaintiff was responsible for ordering concrete and lumber; however, Defendants set the quantities of the orders and Plaintiff was not permitted to deviate from the predetermined order. For example, if a supplier did not send enough lumber for a subcontractor, Plaintiff was required to complete an Extra Purchase Order (EPO) and send to management for additional supplies to be ordered.

23. Plaintiff periodically engaged in manual labor. For example, Plaintiff was required to dig a hole in the ground and install permit boards outside of the homes. Additionally, when subcontractors failed to complete their tasks, Plaintiff would do "punch out" and touch-up work to complete the unfinished tasks. Plaintiff would also remove trash and, if a storm was imminent, would secure lumber and portable toilets, and remove drain socks.

24. Plaintiff did not supervise any employees of Defendants. Furthermore, Plaintiff did not have the authority to hire, fire, discipline or conduct performance evaluations for any employee of Defendants.

25. Plaintiff was not permitted to stop the work of subcontractors without approval from his supervisors.

26. Plaintiff did not have authority to order subcontractors to remove their employees from the property.

27. Plaintiff had no input as to which subcontractors would be re-contacted for future services.

28. Plaintiff did not have authority to modify new home plans.

29. Additionally, Plaintiff did not:

   (a) formulate, affect, interpret, or implement management policies or operating practices; instead, Plaintiff was required to strictly adhere to management and operating policies and practices of Defendants. For example, the policies applicable to the subcontractors/trades are created and implemented by Defendants;

   (b) carry out major assignments in conducting the operations of Defendants' business;

   (c) perform work that affected Defendants' business operations to a substantial degree;

   (d) have authority to commit Defendants to matters that had significant financial impact; for example, all matters with the subcontractors is predetermined, so Plaintiff had no authority to commit Defendants to anything beyond what was contractually predetermined;

   (e) have authority to waive or deviate from established policies and procedures without prior approval from his supervisors; for example, Plaintiff could not adjust the construction process when he believed it was necessary; instead, Plaintiff was required to follow the blueprints approved by the county and Defendants;

   (f) have authority to negotiate and bind Defendants on significant matters; for example, Plaintiff could not negotiate with subcontractors, suppliers or inspectors as to price or costs;

   (g) provide consultation or expert advice to Defendants' management;

   (h) have involvement in planning long-term or short-term business objectives;

      (i)      investigate or resolve matters of significance on behalf of Defendants; for example, if there was a design flaw on the plans, Plaintiff had to inform management as to the flaw in order for Defendants' management to resolve the matter;

      (j)      represent Defendants in handling complaints, arbitrating disputes, or resolving grievances; for example, if a homeowner had a complaint, Plaintiff was required to inform his supervisor, but could not deviate from the plan without management approval. Similarly, if issues arose with the subcontractors, Defendants' management worked with the subcontractor to resolve the issue;

30. Defendants' homebuilding operations are the most substantial part of its business and, as of November 30, 2018, Defendants had homebuilding segments in 19 states across the United States.

31. As of November 30, 2018, Defendants were actively building and marketing homes in 1,329 communities. At that time, Defendants employed 11,626 individuals, with 7,844 involved in Defendants' homebuilding operations.

32. At the time of filing Plaintiff's Complaint and Demand for Jury Trial, Defendants had 16 active job postings for Construction Managers/Superintendents across 10 states (Florida, Nevada, Indiana, Georgia, Arizona, California, Minnesota, Tennessee, Utah, and Maryland).

33. Defendants employed, and continues to employ, numerous Construction Managers/Superintendents who were and are non-exempt employees, had to adhere to the same policies and procedures of Defendants and had the same work requirements, job duties, and compensation structure as Plaintiff.

34. Plaintiff, and all other similarly-situated Construction Managers/Superintendents, were/are working in excess of forty (40) hours per work week and Defendants knew or should have known.

35. For example, in or around the week prior to Thanksgiving 2019, Plaintiff was informed that he would have to work the Friday and Saturday after the holiday. Plaintiff asked Tad Thaxon (Division President) if he would be paid over time for the additional hours. Thaxon responded: "you don't get OT, you're exempt."

36. At all times material, Plaintiff, and all other similarly-situated, were regularly required to work in excess of the maximum hours allowed by law (overtime hours). However, Defendants failed to keep accurate time records reflecting the hours worked by Plaintiff and others similarly-situated.

37. Plaintiff, and all others similarly-situated, were/are not exempt from the overtime provisions of the FLSA. Therefore, Plaintiff, and all others similarly-situated, are entitled to overtime compensation for all overtime hours worked under the FLSA.

38. Defendants' violations of the FLSA were/are knowing, willful, and in reckless disregard of the rights of Plaintiff, and all others similarly-situated.

39. Plaintiff has retained the services of Florin Gray Bouzas Owens, LLC and is obligated to pay his legal counsel a reasonable fee for their services.

## COUNT I
## FAIR LABOR STANDARDS ACT (UNPAID OVERTIME)

40. Plaintiff, KEVIN QUIRK, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

41. Defendants are subject to the requirements of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b).

42. Defendants are enterprises engaged in commerce as defined by 29 U.S.C. § 203(s)(l)(A) in that they (a) have employees engaged in commerce or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and (b) have an annual gross volume of sales made or business done that is not less than $500,000.00.

43. Plaintiff is covered as an individual under the FLSA because Plaintiff was engaged in interstate commerce as part of his job with Defendants. 29 U.S.C. §207(a)(1).

44. Throughout his employment with Defendants, Plaintiff worked in excess of forty (40) hours per week, for which he was not compensated at the overtime rate.

45. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees, such as Plaintiff, at a rate of not less than 1 ½ times their regular rate of pay for all work performed in excess of forty (40) hours in a work week.

46. Plaintiff is entitled to be paid overtime compensation for all overtime hours worked for Defendants.

47. Defendants' failure to pay Plaintiff overtime at a rate not less than 1 ½ times the regular rate of pay for work performed in excess of forty (40) hours in a work week, violates the FLSA, 29 U.S.C. §§201 *et seq.,* including 29 U.S.C. § 207.

48. Defendants knew or had reason to know that Plaintiff performed work in excess of forty (40) hours per work week.

49. Defendants' violations of the FLSA were knowing, willful, and in reckless disregard of the rights of Plaintiff.

50. As a direct result of Defendants' violations of the FLSA, Plaintiff suffered damages by being denied overtime wages in accordance with § 207 and § 216(b) of the FLSA and has incurred reasonable attorneys' fees and costs.

51. As a result of Defendants' violations of the FLSA, Plaintiff is entitled liquidated damages.

52. Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, KEVIN QUIRK, respectfully requests that judgment be entered in his favor against Defendants, including, but not limited to:

    a. Awarding Plaintiff overtime compensation in the amount due to him for the time worked in excess of forty (40) hours per work week as allowable under the FLSA statute of limitations period;

    b. Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

    c. Awarding prejudgment interest;

    d. Awarding reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

    e. Determining that the FLSA was violated and an adjudication on the merits of the case;

    f. Ordering any other further relief the Court deems just and proper.

## COUNT II
## FAIR LABOR STANDARDS ACT - COLLECTIVE ACTION

53. Plaintiff, KEVIN QUIRK, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

54. The claim for violation of the FLSA is brought pursuant to 29 U.S.C. § 216(b) for all claims asserted by Plaintiff, on behalf of himself and all others similarly-situated, because Plaintiff's claims are similar to the claims of the members of the prospective class.

55. At all times material, Defendants failed to comply with 29 U.S.C. § 201 *et seq.*, in that individuals similarly-situated to Plaintiff worked for Defendants in excess of the maximum hours allowed by law, but no provision was made by Defendants to compensate such individuals at the rate of time and one-half their regular rate of pay for the overtime hours worked.

56. Plaintiff, and all others similarly situated, allege violations of the FLSA on behalf of all persons who were, are, or will be employed by Defendants in the position of Construction Manager/Superintendent, or similar positions during the applicable statute of limitations, who have not been compensated at one and one-half times their regular rate of pay for all overtime hours worked, and for Defendants' failure to maintain and preserve payroll records or other records, containing, without limitation, the total hours worked by each class member each workday and total hours worked by each class member each workweek.

57. The putative class members are current, former, and future Construction Managers/Superintendents of Defendants who worked in excess of forty hours in at least one work week during the past three (3) years.

58. Treatment of this case as a collective action is proper because all putative class members were subject to the same policies and practices related to their compensation as employees of Defendants. Specifically, Defendants misclassified Construction Managers/Superintendents nationwide as exempt employees under the FLSA.

59. The names and addresses of the putative class members are available from Defendants for the purpose of providing notice to prospective class members in a form and manner to be approved by the Court.

60. Defendants' failure to pay such similarly-situated individuals the required overtime pay was intentional and willful.

61. As a direct and legal consequence of Defendants' unlawful acts, individuals similarly-situated to Plaintiff have suffered damages and have incurred, or will incur, costs and attorneys' fees in the prosecution of this matter.

WHEREFORE, Plaintiff, KEVIN QUIRK, individually and on behalf of all others similarly-situated, respectfully requests all legal and equitable relief allowed by law including, but not limited to:

(a) Designation of this action as a collective action on behalf of Plaintiff and all others similarly-situated;

(b) Judgment against Defendants for overtime compensation, liquidated damages, and prejudgment interest;

(c) Payment of reasonable attorneys' fees and costs incurred in the prosecution of this claim;

(d) An adjudication on the merits of the case; and

(e) Such other relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

62. Plaintiff, KEVIN QUIRK, on behalf of himself and all others similarly situated, demands a trial by jury.

Dated this 23rd day of January 2020.

**FLORIN GRAY BOUZAS OWENS, LLC**

*/s/ Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plain*